UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIRINA LANCASTER,                          ) Case No. ED CV 17-1562-PJW
                                           )
                    Plaintiff,             )
                                           ) MEMORANDUM OPINION AND ORDER
          v.                               )
                                           )
NANCY A. BERRYHILL,                        )
ACTING COMMISSIONER OF THE                 )
SOCIAL SECURITY ADMINISTRATION,            )
                                           )
                    Defendant.             )
                                           )

I.

INTRODUCTION

     Plaintiff appeals a decision by Defendant Social Security

Administration ("the Agency"), denying her applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

She contends that the Administrative Law Judge ("ALJ") erred when he:

(1) rejected portions of the reviewing doctors' opinions; (2) rejected

the treating psychiatrist's opinion; (3) found Plaintiff not credible;

and (4) determined that she could work.  For the reasons explained

below, the Agency's decision is affirmed.

II.

SUMMARY OF PROCEEDINGS

In November 2011, Plaintiff applied for DIB and SSI, alleging that she had been disabled since February 2008, due to depression and chronic bronchitis. (Administrative Record ("AR") 232-39, 251.) She later reported that she suffered from depression with psychosis, panic disorder, schizophrenia, high blood pressure, back problems, knee ailments, and sleep issues. (AR 293, 302.) Her applications were denied initially and on reconsideration and she requested and was granted a hearing before an ALJ. (AR 80-81, 85-86, 115-16, 149-50, 178-79.) Following the hearing in June 2013, the ALJ found that Plaintiff was not disabled. (AR 10-27, 35-79.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-3.) She then filed an action in this court. In 2016, the Court reversed the Agency's decision and remanded the case to the Agency for further consideration of the credibility issue. (AR 964-72.)

On October 6, 2016, a different ALJ held a second hearing. (AR 882-921.) On March 28, 2017, he issued a decision denying benefits. (AR 816-30.) Thereafter, Plaintiff filed the instant action.

III.

ANALYSIS

A.   The ALJ's Residual Functional Capacity Finding

Plaintiff contends that, in concluding that she could work, the ALJ ignored the reviewing doctors' opinions that she was moderately limited in her ability to maintain a work schedule. (Joint Submission

1   at 6-9.[1])  She argues that "it is extremely reasonable to interpret

2   moderate limitations to mean a minimum of two or more additional 10

3   minute breaks per day," which would mean that she would be unable to

4   maintain a job.  (Joint Submission at 8.)  For the following reason,

5   this argument is rejected.

6        Though it may be reasonable to assume that the term "moderate

7   limitations" translates into needing two extra ten-minute breaks per

8   day, there is no authority in the regulations, the case law, or the

9   record to support such a proposition and the Court is not inclined to

10  adopt this interpretation on its own.  This is particularly so because

11  the record suggests the opposite is true.  Even the reviewing doctors

12  who found that Plaintiff was moderately limited in her ability to

13  maintain a schedule (Cummings and Loomis) opined that she could still

14  work.  (AR 112, 129.)  The third reviewing doctor, Dr. Paxton,

15  concluded that Plaintiff would have no significant limitations in her

16  ability to complete a normal workday and workweek.  (AR 428.)  Thus,

17  the ALJ's conclusion that Plaintiff's psychiatric impairments would

18  not preclude her from working was reasonable and is supported by the

19  doctors' opinions.  For that reason, it will not be disturbed.

20

21

22       [1]  The Court requires the parties to file a joint stipulation in
    which they weave together their contentions and arguments in one
23  brief.  Counsel claims they were unable to do so because their word
    processing programs were incompatible.  Instead, they stapled their
24  briefs together and submitted them as one document, which they labeled
    "Joint Submission."  Among other problems caused by this solution,
25  there are two page ones, two page twos, etc., in the document.  To
    avoid confusion, the Court has used the page numbers superimposed on
26  the brief by the electronic filing system.  In the future, counsel are
    directed to follow the Court's order and file one brief.  Counsel's
27  claim that the United States Justice Department is incapable of
    formatting a document with different software is not acceptable.
28

3

1    Plaintiff complains that the ALJ rejected Dr. Paxton's finding

2  that she had suffered one-to-two episodes of decompensation even

3  though the ALJ accepted other parts of Dr. Paxton's opinion.  (Joint

4  Submission at 7.)  She accuses the ALJ of "cherry picking" from Dr.

5  Paxton's opinion to support his conclusion.

6    The Court does not see it that way.  The ALJ explained why he had

7  rejected Dr. Paxton's opinion about decompensation episodes--mostly

8  because there were no medical records evidencing emergency treatment

9  for psychiatric issues--and this reason is supported in the record.

10  (AR 828-29.)  ALJs are empowered to accept parts of a doctor's opinion

11  and reject other parts.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

12  Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989).

13  And they routinely do so.  Where, as here, the ALJ has valid reasons

14  for doing so, his finding will be upheld.

15    Finally, Plaintiff argues, without citation to any authority,

16  that the ALJ's finding that Plaintiff could perform simple, repetitive

17  work was inconsistent with the reviewing doctors' opinion that she was

18  limited to repetitive, self-paced tasks.  (Joint Submission at 8-9.)

19  The Court does not find this argument persuasive.  The two terms

20  appear to overlap fairly neatly and there is nothing in the record or

21  Plaintiff's brief to suggest that they are mutually exclusive.  As

22  such, this finding, too, will be upheld.

23  B.   The Treating Psychiatrist's Opinion

24    Plaintiff contends that the ALJ failed to properly consider her

25  treating psychiatrist's opinion that she was severely limited and was

26  unable to perform full-time work.  (Joint Submission at 9-11.)  For

27  the following reasons, the Court finds that the ALJ did not err here.

28

4

The ALJ discounted the treating psychiatrist's opinion because it was: (1) provided on a check-the-box form; (2) inconsistent with his treatment notes; and (3) inconsistent with Plaintiff's statements that she was able to take care of herself. (AR 826-27.) These are specific and legitimate reasons for rejecting a doctor's opinion. *See, e.g., Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (rejecting treating physician's opinion because it was "conclusory and brief and unsupported by clinical findings"); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (holding ALJ may reject "check-off reports that [do] not contain any explanation of the bases of their conclusions"); *Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (upholding ALJ's rejection of treating doctor's opinion that was inconsistent with doctor's own findings); *Magallanes*, 881 F.2d at 751-52 (upholding ALJ's rejection of treating physician's opinion that contradicted the claimant's testimony). Further, they are supported by the evidence.

In May 2016, Plaintiff's treating psychiatrist, Dr. Hf, completed a one-page, check-the-box form, indicating that Plaintiff was suffering from auditory hallucinations influenced by psychotic symptoms; mildly impaired memory and judgment; confusion, insomnia, depression, anxiety, panic episodes, manic syndrome, decreased energy and isolation; and symptoms of apathy, alogia, avolition, and social withdrawal. (AR 1220.) Doctor Hf believed that Plaintiff could interact appropriately with family but not with strangers, co-workers, or supervisors/authority figures; needed assistance with hygiene, medications, and keeping appointments; could not manage her own funds; and could not complete a 40-hour work week without decompensating. (AR 1220.) Dr. Hf also believed that Plaintiff was not able to

maintain a sustained level of concentration, perform repetitive tasks

for an extended period or time, or adapt to new or stressful

situations.  (AR 1220.)

The ALJ discounted Dr. Hf's opinion because it was set forth in a

one-page, check-the-box form.  (AR 1220.)  Further, though Dr. Hf's

treatment notes reported symptoms of depression, anxiety, auditory

hallucinations, and paranoid ideations--consistent with his opinion--

his mental status examinations in 2015 and 2016 revealed generally

unremarkable symptoms and showed appropriate speech; normal motor

activity; appropriate appearance; normal/goal-directed thought

process; "obsessions/preoccupations" thought content; appropriate mood

and affect; oriented/alert, sometimes distracted cognition; and

judgment and insight within normal limits.  (AR 1199-1202, 1204, 1214-

15, 1217-18, 1221-22.)  The doctor's records also show that, though he

altered Plaintiff's medication and dosage periodically, he generally

found that her medications were effective in treating her symptoms.

(AR 1194, 1200-02, 1215, 1222.)

In an August 2015 Adult Psychiatric Assessment, Dr. Hf referenced

an October 2014 GAF score of 50 and noted ongoing symptoms of

depression, anxiety, moody periods, and sleep problems.[2]  But he also

found that she had normal speech and motor activity; good eye contact;

responsive interactions; appropriate/full range affect; normal/goal

directed thought processes; an alert level of consciousness; intact

---

[2]  A GAF score of 41-50 indicates "[s]erious symptoms (e.g.,
suicidal ideation, severe obsessional rituals, frequent shoplifting)
OR any serious impairment in social, occupational, or school
functioning (e.g., no friends, unable to keep a job)."  American
Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental
Disorders 34 (4th ed. Text Revision 2000).

memory; was oriented to person, place, time, and purpose; and had good insight. (AR 1208-09.) He noted, "[n]o [complaints of] voices, no delusion," "[n]o [involuntary commitments]," and he continued her on her medications. (AR 1209-10.) Thus, Dr. Hf's treatment notes taken as a whole do not support his May 2016 opinion that Plaintiff's psychiatric impairments were so severe that she was incapable of working.

The record also supports the ALJ's finding that Plaintiff represented that she could take care of her hygiene, manage her finances, and live alone, though she testified that it would be difficult for her to do so if her boyfriend and daughter did not help her each day. (AR 338, 886, 895-96.)

In the end, the Court concludes that the ALJ's decision to discount Dr. Hf's opinion was based on specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1989). For that reason, his decision is upheld.[3]

---

[3] Plaintiff argues in passing that the ALJ erred by concluding that she could work as a housekeeper, inspector/hand packager, and price mailer. She claims that "common sense" dictates that she could not perform the job of housekeeper because of physical limitations and the inspector/hand packager and price marker jobs because she was precluded from fast-paced work. (JS 11.) These arguments are rejected. The ALJ was entitled to rely on the vocational expert's testimony that Plaintiff could perform these jobs, despite her limitations. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). Further, nothing in the Dictionary of Occupational Titles' descriptions of these jobs suggests that the housekeeper job would require more than occasional postural activities or that the inspector/hand packager and price marker jobs would require fast-paced work. *See* DICOT 209.587-034, 559.687-074, 323.687-014. For these reasons, the ALJ's finding that Plaintiff could perform these jobs is affirmed.

C.    Plaintiff's Testimony

    The sum and substance of Plaintiff's testimony was that her physical and mental infirmities precluded her from working.  The ALJ discounted this testimony because: (1) Plaintiff's claims about her ailments were inconsistent; (2) there were significant gaps in her treatment; (3) she failed to comply with the prescribed course of treatment; and (4) the objective evidence did not support her alleged impairments.  (AR 821-26.)  These are valid reasons for questioning a claimant's testimony.  *See Greger v. Barnhart,* 464 F.3d 968, 972 (9th Cir. 2006) (explaining ALJs are entitled to consider a claimant's inconsistent or non-existent reporting of symptoms in the credibility evaluation); *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007) (explaining ALJ may consider claimant's failure to seek treatment or follow prescribed course of treatment in evaluating testimony about severity of pain); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (noting ALJ can consider objective medical evidence in determining credibility of claimant).  And, as explained below, though not all of them are convincing and/or are supported by substantial evidence, there is enough there to uphold the ALJ's finding that Plaintiff was not credible.

    At the June 2013 hearing, Plaintiff testified that she suffered from back pain that prevented her from standing for a long time, walking farther than from room to room, sitting for longer than 15 or 20 minutes, carrying almost anything, and doing most chores.  (AR 44-47, 53, 61-63.)  She also testified that she had panic attacks when she went outside, did not like to be around groups of people, and spent most of her time sleeping, watching TV, and coloring.  (AR 47,

1 49-50, 58.)  Finally, she claimed that she was hearing voices every
2 other day and would sometimes hallucinate.  (AR 50-51.)

3      At the October 2016 hearing, Plaintiff testified that she still
4 could not work because of mental health issues and back, leg, and knee
5 pain.  (AR 891.)  She reported that she took showers, cooked, cleaned,
6 and did laundry, but generally stayed in her room or sat on her patio,
7 slept, watched TV, and colored.  (AR 893-96.)  She also noted that she
8 was still hearing voices and had difficulty leaving her house due to
9 anxiety and panic attacks.  (AR 898, 902-04.)

10      The ALJ discounted Plaintiff's testimony because he concluded
11 that her statements about hearing voices were inconsistent.  He noted,
12 for example, that she told the examining psychiatrist in 2012 that she
13 had been hearing a little girl's voice in her head since 1995, but the
14 medical records established that, when she first reported it, in March
15 2010, she claimed that she started hearing voices three months
16 earlier.  (AR 445, 650, 729, 822.)  The ALJ also focused on the fact
17 that Plaintiff first told the examining psychiatrist that she could
18 not remember the last time she had heard voices but later in the
19 examination told him that she had heard them the night before.  (AR
20 729, 822.)  Finally, the ALJ considered the fact that Plaintiff had
21 sometimes claimed that the voice was calling out her name and at other
22 times claimed that the voice was taunting, teasing, and laughing at
23 her.  (AR 445, 722, 822.)

24      Clearly, these discrepancies in how, when, and what she was
25 hearing are significant and call into question her credibility.
26 Plaintiff tries to explain them away by suggesting that the
27 discrepancies were due to the fact that she was reluctant to tell
28 people that she was hearing voices because she was afraid that they

9

might think that she was crazy.  (AR 891, 902.)  But the disclosures

the ALJ focused on were made by Plaintiff when she was seeking medical

treatment or being evaluated for social security benefits.  In that

context, her explanation makes no sense.

The ALJ also discounted Plaintiff's testimony because he found

that her symptoms had waxed and waned over time, which led him to

believe that she was not being truthful.  (AR 822.)  Although this

finding is not necessarily unreasonable, it seems that the ALJ may

have overlooked the fact that these types of symptoms often wax and

wane.  *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)

("Cycles of improvement and debilitating symptoms are a common

occurrence, and in such circumstances it is error for an ALJ to pick

out a few isolated instances of improvement over a period of months or

years and to treat them as a basis for concluding a claimant is

capable of working."); *Aguilar v. Berryhill*, 2017 WL 3269376, at *3

(C.D. Cal. Aug. 1, 2017) ("'[W]axing' and 'waning' do not necessarily

contradict the existence of extreme mental limitations.").  As such,

this reason for questioning Plaintiff's testimony is rejected.[4]

The ALJ also discounted Plaintiff's testimony because she did not

always take her medication and because there were "significant" gaps

in her treatment.  (AR 643, 721-25, 769, 779-80, 782, 822.)  There is

support in the record for these findings: Plaintiff failed to take her

_____

[4]   To the extent that the ALJ based his credibility finding on
the fact that Plaintiff's testimony about her mental limitations was
inconsistent with her ability "to interact appropriately with [the
ALJ] and the court staff at the hearing" and with her failure to
"appear to be responding to any internal stimuli" (AR 821), that
reason is also rejected because these types of findings are disfavored
in this circuit.  *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir.
1999) (disapproving of "sit and squirm" jurisprudence).

medications at times and there were gaps of up to 18 months in the

treatment record.  (AR 568, 722, 728, 750, 769, 790, 1184.)  In some

of the records the ALJ cited, however, it appears that Plaintiff's

failure to take her medications or seek treatment could have been due

to the fact that she did not have medical insurance.  (AR 722, 769,

779.)  ALJs are not allowed to rely on gaps in medical treatment where

a claimant has a good reason for not seeking treatment.  *See Smolen v.*

*Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Garrison*, 759

F.3d at 1018 n.24 ("[W]e do not punish the mentally ill for

occasionally going off their medication when the record affords

compelling reason to view such departures from prescribed treatment as

part of claimants' underlying mental afflictions.").  But in other

instances cited by the ALJ, there appear to be no reasons for the gaps

in treatment or the failures to comply with prescribed treatment.

Further, the latter records, from 2014-16, show, as the ALJ noted,

that Plaintiff's symptoms significantly improved when she took

medication.  (AR 822, 1184-85, 1188-89, 1191-92, 1194-97, 1199-1202,

1207-13, 1215.)  In the end, the Court finds that there is enough here

to uphold the ALJ's finding on this ground.

To the extent that the ALJ found that the objective medical

evidence did not support her allegations regarding social anxiety and

agoraphobia, this reason is supported by substantial evidence, too.

(AR 823-26.)  The ALJ cited Plaintiff's cooperative and normal

behavior, which was noted throughout her treatment history, her

failure to report social anxiety to the psychiatric examiner, her

demeanor during the examination, and her ability to go grocery

shopping, which he noted was a "highly public place."  (AR 822-23,

826.)

Generally speaking, Plaintiff's behavior with the medical personnel who treated her over the years was normal and cooperative, with some exceptions.  For example, in December 2011, after being off her medication for a year, Plaintiff's dysfunction rating was severe, but she was oriented to time and place, her short-term memory was intact, and her attention, psychomotor and thought were within normal limits.  (AR 643, 721-22.)  She had poor judgment and insight, rambling speech, and auditory hallucinations.  (AR 722.)

In a July 2012 assessment, Plaintiff reported that she did not want to leave the house due to anxiety.  Her mental status examination revealed normal speech, good eye contact, restless motor activity, cooperative interactions, oriented times four, auditory perceptions/ hallucinations, anxious mood, depressed affect, and poor impulse control.  (AR 783.)

In March 2014, she was found to be "[f]airly groomed, cooperative with good eye contact, motor: [within normal limits]; speech: [within normal limits]; mood: "alright"; affect: neutral, congruent; [thought process]: linear; [thought content]: denies anxiety, delusions, paranoia, obsessions, compulsions; denies [suicidal/homicidal/violent-impulses]; denies [audio/visual hallucinations]; cognition: fair; [awake & oriented x3]; attention/concentration: fair; impulse control: fair; [insight/judgment]: fair."  (AR 1185.)

In June 2015 and April 2016, Plaintiff's mental status examination revealed appropriate speech, normal motor activity, appropriate appearance, normal/goal-directed thought process, obsessions/preoccupations thought content, appropriate mood and affect, oriented/alert cognition, and judgment/insight within normal limits.  (AR 1201-02, 1217-18.)  The examination was further described

12

as "[n]o [involuntary commitments], cooperative, denied [street] drugs no preg[nancy] issues." (AR 1202, 1218.)

In November 2015, Plaintiff's grooming and self care were fair, she denied delusions, she was anxious often, she heard voices, and her memory was fair. (AR 1213.) Her speech was appropriate, motor activity was normal, appearance was normal, thought process was normal/goal directed, thought content was hallucinations, mood was anxious, affect was appropriate, cognition was oriented/alert and able to concentrate, and judgment/insight was within normal limits. (AR 1212-13.)

Thus, on the whole, the ALJ's finding that Plaintiff's claim of significant impairment was undermined by the fact that she was regularly described by medical staff as normal and cooperative is supported by the record. So, too, is the ALJ's finding that she failed to report social anxiety to the examining psychiatrist. (AR 727-31, 823.)

The ALJ's finding that Plaintiff's ability to go grocery shopping undermined her claims of social anxiety and agoraphobia is not supported by the record. Plaintiff reported that she went grocery shopping only once a month with her daughter, would "go in and out" of the store (because she "would get real anxious"), and by 2013 was no longer going grocery shopping because she did not like the crowds. (AR 50, 55, 58, 286-87, 312, 338, 729-30.) Plaintiff's limited ability to leave the house to go grocery shopping does not contradict her claims of social anxiety and agoraphobia.

In the end, the Court finds that most of the reasons relied on by the ALJ were valid and supported by the record and are sufficient to call into question Plaintiff's claims of debilitating impairment. For

13

that reason, his decision to discount Plaintiff's testimony will be upheld. *See Carmickle v. Comm'r, Soc. Sec.*, 533 F.3d 155, 1162-63 (9th Cir. 2008) (holding error in credibility determination is harmless "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion.").

IV.

CONCLUSION

For these reasons, the Agency's finding that Plaintiff is not disabled and is capable of working is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: September 4, 2018

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE